UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES B. TIDWELL, JR., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 3:14-CV-210 RLM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

Charles Tidwell seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court affirms the Commissioner's decision.

Mr. Tidwell asserts disability as of February 20, 2010 and ending December 31, 2012. The ALJ found that Mr. Tidwell

(1) hadn't engaged in substantial gainful activity since February 20, 2010;

(2) had severe impairments, including morbid obesity, degenerative disc disease, facet arthritis, obstructive sleep apnea, chronic pain syndrome, fibromyalgia, degenerative changes to the bilateral

shoulders post bilateral shoulder surgical intervention, and a major depressive disorder;

(3) had non-severe impairments that included hypertension, Barrett's Esophagus, gastro-esophageal-reflux disease, asthma, chronic obstructive pulmonary disease, degenerative changes to the right knee and foot including late effects of a right foot fracture, abnormal cholesterol and triglyceride levels, abnormal vitamin levels, and low testosterone levels;

(4) didn't have an impairment or combination of impairments that met or equaled the severity of any impairment in the regulations; and

(5) had the residual functional capacity to perform light work as defined in the regulations with physical limitations,[1] and, while unable to perform his past relevant work, could perform other jobs, which include, but were not limited to, a production assembler (2,000 jobs regionally and 325,000 nationally), a bench assembler (1,200 jobs regionally and 130,000 nationally), and a small products assembler (1,500 jobs regionally and 275,000 nationally).

---

[1] The ALJ concluded that through the date last insured, Mr. Tidwell "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" with limitations of "occasional pushing/pulling and overhead reaching, as well as frequent handling and reaching in all other directions with the right upper extremity, occasional overhead reaching and frequent pushing/pulling and reaching in all other directions with the left upper extremity, frequent use of foot controls with the bilateral lower extremities, no crawling or climbing of ladders, ropes, and scaffolds, no more than occasional climbing of ramps and stairs, stooping, kneeling, and crouching, frequent balancing, no exposure to unprotected heights or motor-vehicle operation, no more than occasional exposure to humidity, pulmonary irritants, temperature extremes, vibration, and unpredictable moving mechanical parts." Rec., at 16.

The ALJ concluded that Mr. Tidwell wasn't disabled within the meaning of the Act and wasn't entitled to benefits. The Appeals Council denied his request for review, making the ALJ's amended decision the final decision of the Commissioner of Social Security. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Mr. Tidwell claims the ALJ improperly discounted the opinion of his treating psychiatric therapist and improperly rejected his allegations of pain without offering a reasonable, supported rationale. Mr. Tidwell asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

## I. STANDARD OF REVIEW

The issue before the court isn't whether Mr. Tidwell is disabled, but whether substantial evidence supports the ALJ's decision that he is not. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but, instead, must

3

conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). "At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence." Ali v. Colvin, No. 2:14-CV-305, 2015 WL 5474636, at *2 (N.D. Ind. Sept. 15, 2015).

## II. DISCUSSION

*Opinion of Treating Therapist*

Mr. Tidwell says that even though his treatment history with Rita Micheff, LCSW, began after the December 2012 end of the insured period, the ALJ should have considered her findings because the symptoms she noted began before long before that date. The ALJ did take note of and consider the symptoms Ms. Micheff reported in her February 2013 intake notes – *e.g.,* Mr. Tidwell's depression, chronic pain, hospitalization for a suicide attempt, sleep disturbance, high blood pressure, fibromyalgia – in the parts of his report addressing the findings and conclusions of physicians who provided treatment to Mr. Tidwell within the

4

insured period. So contrary to Mr. Tidwell's claim, the ALJ considered the symptoms Ms. Micheff noted.

Mr. Tidwell next claims the ALJ erred by finding that Ms. Micheff's "medical opinion was not relevant to [his] mental functioning prior to December 2012." Because Ms. Micheff is a licensed clinical social worker, her submission doesn't qualify as a "medical opinion," *see* SSR 06-03p (Aug. 9, 2006) (information from "licensed clinical social workers . . . cannot establish the existence of a medically determinable impairment"), and a review of her submissions shows that she offered no explanations or support for her opinions and no medical findings to support any of her conclusions. Specifically,

- In July 2013, six months after Mr. Tidwell's last insured date, Ms. Micheff completed a "Mental Residual Functional Capacity Questionnaire," on which she checked boxes indicating that Mr. Tidwell (1) was unable to meet competitive standards to complete a normal workday and workweek without interruptions from psychologically based symptoms, (2) was unable to meet competitive standards to perform at a consistent pace without an unreasonable number and length of rest periods, and (3) had no useful ability to maintain regular attendance and be punctual within customary, usually strict tolerances. With respect to those three findings, the questionnaire asked the person responding to "explain limitations .

5

- . . and include the medical/clinical findings that support this assessment." Ms. Micheff left that section blank.

- In response to the question asking whether Mr. Tidwell's "psychiatric condition exacerbate(s) [his] experience of pain or any other physical symptom," Ms. Micheff responded, "Yes." However, the next section, which asked, "If yes, please explain," was left blank.

- Ms. Micheff lastly indicated that she anticipated Mr. Tidwell's "impairments or treatment" would cause him to be absent from work "more than four days per month" and could be expected to last at least twelve months. She offered no supporting information and didn't obtain the co-signature of a concurring physician. *See* Rec., at 1030 ("Social Security will give greater weight to opinions signed by Ph.d.'s, M.D.'s or D.O.'s. Please have a doctor review this form and counter-sign it, if he/she concurs with the above.").

The regulations specify that the ALJ must consider the "supportability" of an opinion, giving more weight to opinions that present relevant evidence and a supporting explanation. 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3). Because no relevant evidence or supporting explanations support Ms. Micheff's submissions, the ALJ didn't err in his decision to give her opinion no weight.

Mr. Tidwell also says the ALJ wrongly concluded that Ms. Micheff's findings relating to his level of functioning were inconsistent with his level of functioning before or right after his last insured date. Mr. Tidwell relies on Ms. Micheff's July

1, 2013 findings, issued six months after his last insured date, that he had "no useful ability to function" when it came to maintaining regular and punctual attendance and would be "unable to meet competitive standards" in completing a normal workweek without interruption and performing at a consistent pace. Mr. Tidwell claims the ALJ failed to properly explain his reasons for rejecting Ms. Micheff's opinion. The record doesn't provide a basis for Mr. Tidwell's claim that Ms. Micheff issued a well-supported opinion. Her responses to the Mental Residual Functional Capacity Questionnaire have no supporting explanations or medical findings. And while Mr. Tidwell complains that the ALJ didn't explain his conclusion that Ms. Micheff's findings relating to his level of functioning were inconsistent with prior conclusions on that issue, the record shows that the ALJ reviewed the medical evidence issued before December 31, 2012, the date last insured, and found, in relevant part, that

– Mr. Tidwell "possesses moderate restriction in his activities of daily living" and "mild difficulties in social functioning,"

– Mr. Tidwell "possesses moderate difficulties in his ability to maintain concentration, persistence, or pace,"

– the severity of Mr. Tidwell's mental impairments didn't meet or equal the paragraph B or paragraph C criteria for the adult mental disorders listings in 12.00 of the Listing of Impairments,

– Mr. Tidwell's response to treatment during 2012 was "best evidenced by the result of his psychological consultative examination at the

7

end of 2012, which indicated good capabilities with regard to sustaining concentration, persistence, and pace as [he] was able to perform basic math computations without error and persist in executing the serial-sevens exercise without error but did not some deficiencies in short-term memory and immediate recall function, [and] demonstrated an ability to interact in a socially appropriate manner with the consultative examiner,"; and

– Mr. Tidwell's "ability to concentrate upon and persist in games of poker throughout the course of a five-day-long tournament at a level which enabled him to win $9,000.00 in early January 2013 lends credence to the assertion that [his] ability to sustain concentration, persistence, and pace in the presence of others was, through the date last insured, not diminished beyond the capacity to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, interact appropriate with supervisor and co-workers in a routine work setting, and respond to usual work situations and changes in a routine work setting."

An ALJ's decision "must be based upon consideration of all the relevant evidence . . . and 'must articulate at some minimal level his analysis of the evidence.'" Orienti v. Astrue, 958 F. Supp. 2d 961, 972 (N.D. Ill. 2013) (*quoting* Herron v. Shalala, 19 F.3d 329, 333-334 (7th Cir. 1994)). And while an ALJ must provide "a logical bridge" from the evidence to his conclusion, he "need not provide a complete written evaluation of every piece of testimony and evidence." Murphy v. Colvin, 759 F.3d 811, 815 (7th Cir. 2014). Based on the totality of the ALJ's

findings relating to Mr. Tidwell's level of functioning, the lack of an additional explanation at page 13 of the Amended Decision about the lack of weight to be afforded Rita Micheff's opinion isn't error. The record supports the ALJ's conclusion that Ms. Micheff's July 2013 findings relating to Mr. Tidwell's level of functioning weren't consistent with findings issued prior to or immediately after Mr. Tidwell's date last insured, and Mr. Tidwell hasn't pointed to any medical evidence in the record that he claims was consistent with Ms. Micheff's findings but ignored by the ALJ.

The ALJ didn't err in discounting the opinion of Rita Micheff, LCSW.

*Pain Allegations*

Mr. Tidwell claims the ALJ improperly rejected his allegations of disabling pain caused by fibromyalgia and challenges the ALJ's finding that the evidence about his fibromyalgia was minimal. Mr. Tidwell says the ALJ admitted that the record shows positive signs of fibromyalgia in early 2011, a diagnosis of fibromyalgia in 2012 after a tender point examination, an inability to treat his pain with Cymbalta or Ibuprofen, and an ongoing level of preoccupation with symptoms of pain through 2012, findings Mr. Tidwell says contradict the ALJ's conclusion that the evidence of his fibromyalgia was minimal. Mr. Tidwell also says the ALJ's discussion of his struggle with pain doesn't paint the whole picture: even though the ALJ found that he has had chronic pain for decades, in his decision the ALJ "cherry picked from the record to find any evidence of

9

improvement" while omitting discussions of relevant findings from his pain management physician. According to Mr. Tidwell, the ALJ failed to consider that (i) although he reported to his treating physician in September 2012 that his low back pain had lessened, he also reported his concern that he had plateaued and the relief from his medications wasn't lasting long enough, (ii) in November 2012 he reported that his pain was the "same" and acupuncture hadn't helped, (iii) his morphine dosage was increased by his pain management physician in late 2012, (iv) in March 2013 he underwent implantation of a spinal cord stimulator system for his back pain, and (v) he reported to his treating physician in May 2013 that based on the lessening of his dosages of medication, his pain was "worse," he couldn't sleep, he was having pain in his right leg and back, and he was noticing more trouble with his neck and numbness in his arms.

According to Mr. Tidwell, his medical records show that in May 2010 he started complaining about fluctuating symptoms that he says are associated with fibromyalgia: shortness of breath, heartburn, rashes, anxiety, fatigue, depression, irritability, muscle pain, weakness, numbness and tingling sensations, difficulty sleeping, diminished appetite, and frequent urination. In support, he cites to SSR 12-2p, which states that fibromyalgia "is a complex medical condition characterized primarily by widespread pain." Mr. Tidwell maintains the ALJ displayed a misunderstanding of his medical condition and failed to consider his ongoing efforts to treat his pain. Mr. Tidwell concludes that the ALJ's decision was "patently wrong."

The court reads the ALJ's opinion differently. The ALJ specifically addressed the following symptoms and evidence relating to Mr. Tidwell's physical condition:

- *Degenerative disc disease and facet arthritis.* Noting that the medical evidence showed "multi-level degenerative changes" to Mr. Tidwell's cervical and lumbar spine, prior fusion surgery, and symptoms of numbness in his extremities, the ALJ found that the evidence "consistently and repeatedly indicates that [Mr. Tidwell's] 'fine motor control is normal,' his grip strength is intact and so is sensory function in all extremities, and EMG testing performed in November 2011 was 'essentially normal.'"

- *Lumbar degenerative disc disease.* The ALJ found that even though Mr. Tidwell complained of low back pain radiating to his lower extremities, the EMG testing of his bilateral lower extremities was "negative for acute radiculopathy;" in addition, Mr. Tidwell reported benefit from treatment "via MS Contin and TENS Unit therapy," he successfully completed outpatient therapy for low back pain in October 2011, having met all physical therapy goals, and, except in the aftermath of injuries and surgical intervention, Mr. Tidwell's "gait has been predominately normal, and testing consistently indicates intact bilateral lower extremities strength, with the most recent evidence from [his] November 2012 medical consultative examination

also noting intact lumbar range-of-motion and negative straight-leg-raise testing."

- *Degenerative changes to bilateral shoulders status, post bilateral shoulder surgical intervention.* The ALJ noted Mr. Tidwell's right shoulder surgery in February 2008 and left shoulder arthroscopy with rotator-cuff repair in December 2009, and noted, as well, evidence from April 2010 showing that Mr. Tidwell was making "excellent progress" in therapy for his left shoulder. The ALJ found that the evidence of improvement was consistent with subsequent evidence "from 2011 and 2012 detailing the level of activities of daily living engaged in by [Mr. Tidwell] including cooking, driving, mowing the lawn with a walk-behind mower, and working on automobiles. . . . [T]his level of activity is consistent with subsequent objective testing indicating generally intact bilateral upper extremities strength, good or intact bilateral shoulder range-of-motion, and normal fine- and gross-motor testing."
- *Fibromyalgia.* The ALJ noted Mr. Tidwell's first diagnosis of "probable fibromyalgia" was in early 2012 and found that the evidence directly relating to fibromyalgia was minimal: "The evidence does indicate some response initially to a regimen of Cymbalta, though [Mr. Tidwell] did opine in mid-2012 that it was not helping like it used to; however, aside from the preceding, the only other relevant evidence is a

12

notation from November 2012 that [Mr. Tidwell] had begun engaging in a fibromyalgia treatment group which he opined was '[h]elpful.'"

- *Chronic pain syndrome.* The ALJ stated Mr. Tidwell had coped with his chronic pain for many years by taking high-dose ibuprofen, but had to discontinue that medication when esophageal issues developed. The ALJ found that even though Mr. Tidwell could no longer use ibuprofen, "the evidence does indicate that he has obtained 'quite a bit of improvement' from message therapy and, through treatment at the Center for Behavioral Medicine, has evidenced an ability to cope with his symptoms," *i.e.*, by being able to drive, cook, and participate in a five-day poker tournament that enabled him to win $9,000.

- *Medical consultants' physical assessment.* The ALJ found the opinions and assessments of state agency medical consultants, who found Mr. Tidwell capable of performing a limited range of light work, to be consistent with the record as a whole. The ALJ determined that the opinion of James McKenna, M.D. – that Mr. Tidwell is further limited with regard to his non-exertional capabilities – was entitled to greater weight because Dr. McKenna's assessment was made with the benefit of a more complete record, including evidence presented at the hearing.

- *Opinions of Mr. Tidwell and Mrs. Tidwell.* The ALJ found the claims of Mr. Tidwell and his wife about Mr. Tidwell's "level of physical limitation, social isolation, and difficult persisting in activity" to be excessive when compared to the medical evidence relating to his "ongoing ability to perform activities of daily living, sustain concentration in activities of daily living, and engage in social interaction."

- *Past work history.* The ALJ concluded that Mr. Tidwell's past relevant work – as an automobile customizer, maintenance repairer, and fence erector – involved medium-to-heavy exertional levels and so exceeded the limitations of his residual functional capacity for a limited range of light work.

An ALJ isn't required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." Simms v. Astrue, 599 F. Supp. 2d 988, 997 (N.D. Ind. 2009); *see also* Murphy v. Colvin, 759 F.3d 811, 815 (7th Cir. 2014) ("In reaching its decision, the ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence."). The court must decide whether the ALJ provided a sufficient basis for his findings and conclusions. As already noted, the ALJ's report contains his review and consideration of the medical evidence relating to Mr. Tidwell's fibromyalgia and chronic pain conditions, *see* Hodges v. Astrue,

14

No. 1:09-CV-216, 2010 WL 3717256, at *9 (N.D. Ind. Sept. 14, 2010) ("[T]he relevant inquiry is whether his pain was of a disabling severity during the relevant period, not the diagnosis that he was assigned."), and his conclusion that Mr. Tidwell's statements about the intensity, persistence, and limiting effects of his symptoms weren't entirely credible. *See* Ellis v. Astrue, No. 2:09-CV-145, 2010 WL 3782265, at *20 (N.D. Ind. Sept. 30, 2010) ("A claimant's statements may be found less than credible if the level or frequency of treatment is inconsistent with the level of complaints."). Mr. Tidwell disagrees with the ALJ's conclusion that the medical evidence doesn't support his claim of disabling pain, but the court can't "reweigh the evidence or substitute [its] own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, [the court] must uphold the decision under review." Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012). The ALJ's review of the medical evidence supports a finding that his determination in this regard is grounded in substantial evidence in the record.

The record confirms, and the ALJ found, that Mr. Tidwell's fibromylgia and chronic pain condition continue; the record shows, as the ALJ also found, that Mr. Tidwell's ability to cope and manage his pain continues, as well. The court can't say these conclusions by the ALJ were "patently wrong" and unreasonable or not supported by the record.

III. CONCLUSION

The ALJ didn't ignore important evidence in the record. The ALJ adequately considered Mr. Tidwell's fibromyalgia and chronic pain when determining whether Mr. Tidwell met or medically equaled a listing and his residual functional capacity. Accordingly, the final decision of the Commissioner of Social Security is AFFIRMED.

SO ORDERED.

ENTERED:   January 27, 2016

                                   /s/ Robert L. Miller, Jr.
                                  Judge, United States District Court